Good morning, Your Honors. Natasha Teese on behalf of Plaintiffs' Appellants. I'd like to start this morning focusing on the three main legal errors that we believe the District Court committed. The first is that it overemphasized the form nonconvenience analysis within the context of a personal jurisdiction motion, essentially depriving plaintiffs of the shifting burdens. It essentially placed the burden on plaintiffs to show that California was an inadequate forum as opposed to having that burden shifted to the defendant to prove that either Argentina or Germany was an adequate alternative forum. And the second key issue is that in the context of a personal jurisdiction motion, the District Court essentially resolved some key issues in favor of the defendant, even though plaintiffs had submitted contrary evidence. And the two key things I'd like to point out is one, on the issue of agency, on the issue of whether or not the subsidiary, Mercedes-Benz USA, and I'll just use MBUSA, whether or not it acted as a sole distributor within California, and also whether it was an agent to the defendant generally, that the Court made adverse findings on that, essentially crediting defendants' version of the fact that, well, no, we would be able to rely on an independent distributor when, in fact, there was no evidence to show that. There was no history of them relying on an independent distributor where that had succeeded. And plaintiffs specifically pointed out contradictory evidence showing that it did not work. Yet the District Court still credited the defendants' version of the facts on that point. Ginsburg. Let me just ask a question that I'm curious about. How can you have an agency test that does not consider control when control is one of the defining features of agency? Well, yes, Your Honor, I understand that question. I think our position is not that control is irrelevant to the equation. Our position is that it's not central to it. In other words, that it does not turn on it as it does in an alter ego analysis. That when you're talking about agency in this particular context for jurisdictional purposes, you're really asking, can the defendant conduct the activities it's conducting in this forum, but for the existence of the subsidiary? So I think if you go through, I think the Doe v. Unocal case that defendants rely on, the cases in this circuit that have interpreted that, specifically the Modesso case, sorry for the pronunciation, makes clear that there's a clear distinction between alter ego and agency. And the key is the control issue. You side to Modesto, but Modesto, of course, is not controlling authority for us. And doesn't the language in Unocal, Rutzke, Kramer, and Wells Fargo imply that control is a part of the inquiry? Well, again, Your Honor, we do not disagree. And in our papers, we in fact do say that there is control present. We simply are saying that it's not controlling. Our reading of the Doe v. Unocal and Harris v. Rutzke case, as interpreted by how the cases in this circuit have applied it, is what we've relied upon. Now, what we do say in our briefs is that clearly there is control here, that the It has a central buying model. They have interchange of personnel on their board. They own 100 percent of the stock through an indirect subsidiary. They created MBUSA. They tell MBUSA how to market the vehicles. It owns the trademark of Mercedes, that essentially the subsidiary in California really could not sell or function without the parent dictating what it's doing and how it's selling vehicles in California. So I think we do clearly set that out in our brief. But again, I think a technical legal point is to distinguish between agency and alter ego to establish that control is not required. It's a factor among many factors that you would look at to examine what is really the core of the relationship. And I think in this global economy that that's really at the heart of it, looking at the Thank you. Finally, just to get back to the core three issues here, the last issue is, well, related to the second issue, is whether or not the court erred in crediting defendant's foreign law expert. Because, again, the sole I'm sorry, crediting law? The defendant's foreign law expert, specifically on the German, the German law expert, again, our position is that this court, this district court essentially based its ruling on the fact that it felt that this case did not belong here in the United States, and specifically in California, because in its mind, this case belonged in Argentina or belonged in Germany. And that was really the crux of the decision. If you went back and you looked at its first order, which we believe was a tentative ruling, but even if you look at the two orders collectively, what you have is you have four factors essentially weighing in favor of the plaintiffs, and only three in favor of the defendants. And those factors were primarily that the case arose in Argentina, and that the witnesses and some of the documents were there, and that arguably the defendant was a German-American corporation. The key factors in terms of purposeful availment or interjection into the California market, the district court clearly found that in favor of plaintiffs, saying that defendant had used the courts of California, its vehicles were being sold here, it has significant sales within the California market. It also found that the undue burden to the defendant would be slight, considering its size, considering modern means of travel. The next factor was the sovereign interest of Germany and Argentina. And again, there it found that that was mitigated by the fact that defendant did interject itself into California. It also noted that this was an ATS and TVPA case, and that because of that, that there was some interest in hearing this case in California. And finally, it said that it credited plaintiff's version that plaintiffs could get more efficient relief in California. So you have definitely two weighing in favor of plaintiffs, two only slightly flavoring defendants, acknowledging that this is an ATS-TVPA case, and saying that plaintiffs could, in fact, obtain more effective relief here. Well, let me just ask you a question about control. Mercedes used to have independent, used to have distributors here. And now Toyota is distributing Mercedes. Doesn't that go against your argument? Well, actually, Your Honor, I think the defendant's brief, they say that they could use the Toyota model. My understanding is that they have not actually employed that method, and that they're just simply saying that other distributors have used that model. Our position is that you need to look at the history. Have they, in fact, used this? And more importantly, would they use it in a market as significant as this? Forty-five percent of their sales occur in the United States. I mean, one need only go to Beverly Hills to see the amount of Mercedes cars going up and down the freeway. So I think, again, this is really an issue of whose version of the facts do you credit within the context of a motion to dismiss? I think there's a reasonable inference here that if they have not used it in the past, why would we credit their version that they may use it in the future for a market of this size, I think is our position. Just to get back to the, I think, the final issue that we have a problem with was that the district court didn't at all look at whether or not it could assert jurisdiction under the Federal rules, under Rule 4K2, based on the fact that Mercedes cars are almost on every freeway in the United States. It also did not alternatively consider transferring the case to Michigan, where a defendant admitted that it had a headquarters. So we think that if you look at, you know, these three sort of overarching issues, that the district court's decision can be the same. The ruling that we're reviewing is only on jurisdiction? Yes, Your Honor. It's not on whether, once there is jurisdiction, it should be dismissed for nonconvenience or transferred to another venue somewhere else? Yes, Your Honor. The defendants in this case never filed a forum nonconvenience motion. Essentially, the court treated it as though it did by looking, you know, overemphasizing that factor. And our position was, well, okay, if you're going to look at that factor before you consider dismissing it, you know, to Argentina or Germany, that you should have looked at transferring it to Michigan, where they admit that they have operations. Okay. I suppose your same theory would go for Louis Vuitton and Chanel and luxury items that operate through subsidiaries in the world, just arguably, but located outside of the United States but have various subsidiaries in Australia or China or India, that they're all subject to suit because of the volume and the amount of the profit that is from the United States? No, Your Honor. As much as we would like that to be the case, given the type of law that we do, that is not the case. I think... That would upset international commerce pretty badly, I would think. No. I think that it's factually specific, that I think you would need to look at, is it an exclusive distributor? What is the relationship between the parent and the subsidiary? What is the volume of sales? Looking at control, looking, I think, at, you know, all the factors outlined by the case law, I don't think you could make a broad assessment that every parent in the global economy automatically is subject to suit here. We think this particular corporation is subject to suit here because of those factors that I outlined. Okay. And if there are any other questions, concerns? There don't appear to be any. Thank you. Okay. Okay. I'll just, I'll set aside about five minutes for rebuttal.     Okay. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. May it please the Court. Good morning, Your Honors. My name is Matthew Kemner, and I represent Daimler-Chrysler-Achtung-Gesellschaft or A.G. My client is a German public share company with its Sitz or seat in Stuttgart, Germany. I'd like to bring in the Court. German pronunciation is excellent. Thank you, Judge Schroeder. My husband would enjoy that very much. Thank you. Let me begin my presentation by clarifying what this case is not about. All right? This case is not about Daimler's contacts with California. There are none significant at all. Maybe a trip to Mono Lake to contribute to some environmental project. No contacts with Daimler. Judge White correctly ruled on that, and it's not before you. There's no systematic and continuous contacts of Daimler for general jurisdiction. And there's no contacts related to the aggravement of this complaint, the 1970s atrocities committed by the 1970s military dictatorship in Argentina. There's no contacts related to that complaint related to California. There are also, in that respect, this is an agency case, as you know. There's no alleged contacts of the alleged agent, Mercedes-Benz USA, the indirect subsidiary. They are in any way related to the relationship between Daimler in Germany and Mercedes-Benz Argentina down there. The case is not about that. Aren't we primarily just looking at whether the distributor here is your agent? Yes. Yes, Your Honor, on the contacts side. There's two issues before the Court, reasonableness and contact. And Your Honor is exactly correct. What was appealed was essentially the second order. Now, of course, Judge White in his second order incorporated by reference his first order to bring them together, but my opponent has only appealed the second order. And the second order addressed two points that Judge White wanted follow-up on on the first order. He wanted so he had a briefing schedule that he set up, and he gave supplemental discovery. Those two points were, is there an agency issue? And second, because, of course, he said directly, as I said earlier, there's no contacts with Daimler, so is there an agency issue with MBUSA? Take discovery on that, and let's have a later briefing. And then the second issue is, let's hear a little bit more about the potential alternate fora of Germany and Argentina. So take discovery on that, and let's rebrief that. That's in the second order. That's what's appealed. This is a case. Isn't everything in the second order by reference? Please. I said the only action is in the second order, isn't it? As we understand the appellant's ---- The dismissal is in the second order, isn't it? Well, the second order built on the first order. And that's one of the things that we think that the plaintiff appellants really unfairly accused Judge White of. What they said and what my opponent has just said was Judge White really just focused on forum nonconvenience and turned this into a forum nonconvenience motion. Certainly not. As wrong as it would be to do that, it's also ---- it would also be wrong not to look at the other six factors. Judge White looked at those other six factors and correctly ruled on them, established that in the first order. Those aren't appealed. But as a follow-up, he said, I want some supplemental briefing on the two issues. So all this did was close the loop on one of the seven factors in the reasonableness. And then once you talk about reasonableness, let's look at the case. Interestingly, I note that my opponent didn't talk about reasonableness. When we have personal jurisdiction, we always have two issues. Even in general jurisdiction cases like this one, as the Supreme Court has said in Helicopteros, we have contacts and we have reasonableness. What is this case about? This case is about 23 plaintiffs. All 23 are residents of Argentina. Twenty-three are citizens of Argentina. One is a citizen of Chile. They allege that an Argentine ---- Kennedy, are you conceding the first issue of ---- Of contacts? Yes. Certainly not. No. I was going to address reasonableness first, but would you prefer me to address   We certainly do not concede contacts. The defendant is a German public share company from Stuttgart. The allegations are that there were bad acts committed primarily by the Argentine military dictatorship, but then somehow that Mercedes-Benz Argentina was involved. Bad acts in Argentina against Argentines with Argentine injuries potentially involving a German company. Isn't that almost always the case with the Alien Tort Claims Act? Not necessarily, Your Honor. Not necessarily, but I mean that it's ---- I mean, if that jurisdiction isn't limited to acts committed by California corporations. Your Honor is correct that the Alien Tort Claims Act in most of the cases do involve non-U.S. actions. But you'll also find in the Alien Tort Claims Act where jurisdiction is looked at, that even though it's an important statute, and we agree it's an important statute, it has to be subservient to the Due Process Clause of the U.S. Constitution. And what does that mean? There has to be some contact here. There has to be some contact, and it has to be reasonable. And not just some contact. It's got to be sufficient contact. It's either got to meet the specific jurisdiction test, which is not before us, or it has to meet the general jurisdiction test. And then if it's there, then it would have to be reasonable. So true enough, many of the Alien Tort Claims statute cases do involve non-U.S. But the ones where jurisdiction is, they're still ---- they're still subservient to the Due Process Clause of the United States Constitution, and they must have ---- they must meet the minimum context test. Now, what are the only issues here before the Court today? As I said, is there context under the agency theory such that Daimler in Germany is subject to general jurisdiction here in California for all suits, continuously and systematically present? That's the issue, the first question. And the second one is the reasonableness. The touchstone issue on reasonableness is fair play and substantial justice. Whether it would be ---- whether the factors here make it such that it would be reasonable to be hailed into court here. Now, as I said, the facts here have nothing to do with California. Not a single ---- not a single contact. What do we have on our side? We have a German defendant. We have a German defendant that the allegations show that his ---- their principal place of business is in Stuttgart, Germany. We submitted evidence that Daimler Chrysler AG, Aachen Gazelle Shoppe ---- The problem is how ---- what this would do to the Alien Tort Claims Act in general. If you have a ---- you say you've got a German corporation, but if this ---- if you're doing business here through an agency with the same name, I'm not saying you're going to lose on the first point. But if you lose on the first point, and this is ---- you have a distributing company here, and you're doing business here regularly, you would make this argument even if there were no German company. Well, under Helicopteros, it says that even in general jurisdiction cases, the issue of reasonableness is a separate issue, and it must be addressed. It can't simply be ---- I'm saying it would seem to me that this is going to mean that there's nothing left of the Alien Tort Claims Act, which was designed to give jurisdiction here to these kinds of torts committed in foreign jurisdictions. I would submit to the Court that that is the purpose behind the Alien Tort Claims Act, to give ---- to give a forum, but still that is subject to the constitutional requirements of due process. And it can't simply be that the Alien Tort Claims Act plaintiffs can come here just because it's statute. It must be. It must mean that a ---- It's because you have a defendant who is a California defendant, let's say. Or, or, I mean, what else ---- what else could increase the issue on reasonableness? Perhaps if there was a California injury, a California interest, for instance, in regulating California conduct, punishing a California bad actor, looking out for a California plaintiff, all these things that Judge White correctly ruled, there's no California interest. Well, is this a California bad actor if this is an integral part of Daimler, whatever it is? Let's turn then, let's turn then briefly to the Minimum Contacts analysis. What are you talking about, the contacts? As I read the Daimler, if that's correct, must approve signs, replacement of key personnel, and has the right to modify MBUSA contracts. What about those contacts? Well, what Your Honor is referring to, I think, is the distributor agreement. And the interesting thing about the distributor agreement is it actually proves that Daimler is not or that MBUSA is not the agent of Mercedes ---- Mercedes Benz USA is not the agent of Daimler. What does the evidence show? The evidence shows that that's an arm's-length agreement, that MBUSA is not and may not be Daimler's agent, that MBUSA buys cars in Germany, owns them, brings them over the Atlantic to the United States, not as an agent, but as an owner, and sells them, faces the risk if they don't sell them. If they wanted to dominate MBUSA and wanted to do business through MBUSA, you wouldn't need the distributor agreement. Certainly, the distributor agreement gives them some ---- some ability to generally control how they do the business. But as Judge Schroeder correctly pointed out, let's take the example of Louis Vuitton or whatnot, anyone who's the agent, whether they're a subsidiary agent or a non-subsidiary agent, all of those companies certainly have the right to implement general standards. We have a luxury item. You have to promise the distributor that if you distribute this, you have to keep up to our general standards. We make the best French handbags in the world, and we don't want you advertising them in a different way. There's nothing improper about that, and this Court has already said that the kind of ---- that kind of indirect oversight is fine. Now, on the two standards for control, this is a really important point. Judge Nelson was exactly correct that the first element is control. It's not something we just gloss over, but in the agency theory, there's two elements, control and the test of would you have to. So let's talk about those. Control, what evidence do we have? These are separate companies. Daimler does not control the day-to-day business. And that's the issue. Overbearing control or controlling the day-to-day business of the subsidiary. We have uncontroverted evidence on that point. Corporate forms are absolutely ---- corporate distinctions are absolutely respected. NBU has the general corporate oversight, which is fine, but there's not the day-to-day control. Now, any authority to the contrary, as you correctly pointed out in Modesto, is trial courts that are bound to follow you and not the other way around. If we went on control, we win on contacts. If we went on the second element, we win on contacts. So let's take a look at the second element of agency. The second element of agency is, but for the subsidiary's existence, would Daimler have to do business in California? Sometimes there's been a suggestion of would they do business in California. Frankly, the Court has already decided in all three justices, Schroeder and Chan, Nelson and Kemko, Reinhart and Harris-Rutzke, have all decided that the would-have-to test is the proper test. Judge Nelson has already correctly pointed out they wouldn't have to. Why? Look at the historical ---- look at the history. They've done it through a private individual, Max Hoffman. They've done it through the Studebaker Company. They've done it themselves. They did it on the G-Class. There's evidence in the record. The G-Class, they ---- Member USA said, we don't want to sell it. You know, we're not just doing your business. We don't want to sell the G-Class. A private company in New Mexico said, well, we'd like to sell the G-Class. So they made their own arrangement to sell the G-Class. They're a totally unrelated company in New Mexico. That's another way it could be done. And finally, the other way that you alluded to, look at Toyota. Toyota decided in the southeast, we don't need a subsidiary. This private company can do it as well. Mercedes-Benz or Daimler could simply go with a private company. Now, more interestingly, and really I think one of the strongest points of evidence in this that made Judge White's decision absolutely correct on context, would they? Would they? Look at the evidence. Daimler acquires 2 percent of its worldwide revenues from California, 2 percent. Who's the businessman, manager in Daimler who's going to say, go into California yourself? Would you go into California yourself and subject your worldwide, Daimler's worldwide income to taxation of the United States government? Because the United States government, for people here, can tax worldwide income for 2 percent of your revenues, not even 2 percent of your profits, 2 percent of your revenues. There's no way they'd do that. It's crazy. And they can't, all they suggest is that because Daimler from now, from time to time has tried to improve and go from one form to another, that this false dichotomy exists that they would have to do it themselves. There's lots of other ways to sell vehicles in California, and certainly they would not. That's the control issue. I would submit to you that what the plaintiffs are trying to convince you that this is a case about bad Argentine military human rights violators versus their victims. That's the temptation. The truth of what is in front of this Court today is something far different. This case is generally about forum shopping. It's about plaintiffs who that record shows they can sue in Argentina. They already are. They're assisting claims in Argentina. Their own lawyer who submitted a claim that said or an affidavit that said they couldn't sue is representing them in Argentina. Well, let me just ask you about that. They say the Argentine courts are all corrupt. What do you do with that? I'm out of time. Should I answer? No. You've got you had five seconds before you asked whether you were out of time. That's Mr. Richard Monner-Sands. Mr. Richard Monner-Sands also said, and Judge White saw this, that you can't do anything here in Argentina because everything is so corrupt. Well, these plaintiffs in Argentina petitioned the president of the company, of the country, Nestor Kirchner. We've been oppressed. Can we meet with you? Yes. We'd like the country overturned the immunity laws, protecting bad actors and that. That was overturned in Argentina. And Richard Monner-Sands, the very person who said we don't have we can't sue down here, Judge White found out, guess what, he's their lawyer down there. All right. I get your answer. Thank you. Okay. Now you have your time. Thank you. Thank you. Okay. Thank you, Your Honor. Since I only have three minutes, I better get to it, huh? Can I ask you a preliminary question? Yes. You are not seeking any further discovery with respect to the jurisdictional issues, as I read your brief. Is that correct? Not to the jurisdictional issues. Our issue is that we weren't given notice and discovery for form nonconvenience. Okay. That goes to form nonconvenience. Right. And my other question is, is there anything with respect to our opinion that brings into play the reason for the sealing at the district court? Apparently your brief was filed under seal. Oh, that's because of the discovery that was conducted, a lot of the documents that we relied on, because this is fact sensitive, were corporate documents. Oh, I see. Okay. That were filed under protective order. Okay. And because it was cited throughout the brief, it just, you know, it would have been crazy to redact it. Okay. There's nothing that really concerns us. Okay. Thank you. Just to touch upon a couple of points. The first point is that the district court's initial ruling was a tentative ruling. As much as we would have liked to appeal it, and believe me, we would have, it was tentative, and we could not find any case that would have allowed us to appeal the tentative ruling that the court itself acknowledged that it was. But, again, even if you look at them together, as I explained earlier, four out of the seven factors either flavored plaintiffs completely or only slightly tilted towards defendants. And, again, as I think Judge Renhard pointed out, this is an ATS and TVPA case, and I think there is a danger that if, in essence, a company that has its own agency says, oh, you know, we're not present in the forum, I think that would be significantly damaging to ATS cases. As to the issue of control, this is not just general oversight. I think, as Judge Nelson pointed out, these are minute details that it's controlling, and that you have to look at the level of control collectively. So whether or not it formalized its ability to control through an agreement or not, the issue is that it has the right to do so. As to the Argentinian and German court issue, I think we submitted in our supplemental experts a ruling from the Argentinian court clearly saying that the statute of limitations would not be told. So, essentially, it's foreclosed in Argentina. Defendants have not countered that. As far as Germany is concerned, our expert said that it would similarly be foreclosed in Germany because there was no equitable tolling. And I think really what this is about is that defendants are losing context, as did the district court, that this is a personal jurisdiction motion. I mean, essentially, defendants are arguing for competing inferences. And the law on this is absolutely clear in this circuit and every other circuit that, you know, when discovery has occurred and no evidentiary hearing has occurred, that you have to resolve conflicts in favor of plaintiffs. And on every single point raised by defendants, plaintiffs countered it either through affidavits or using defendants' own documents. And I think that's exactly where the district court went wrong, that it essentially, because of its belief that, you know, this case shouldn't be here, that this is about Argentinians, that this is about a German corporation who incidentally has a corporation here in the United States in Michigan, that it felt that it shouldn't be here. But clearly, under the ATS and TVPA, it gives authority for the courts to hear these types of cases. And at the core, that's what this is about. Thank you. Thank you. The case just argued is submitted for decision. And I just like to add, I had the case was well argued on both sides. Thank you. The court, thank you. Thank you. We'll hear the last case on the
judges: Schroeder, Nelson, Reinhardt